UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06CV-74-R

PHILLIP MURRAY MODRELL                                                      PLAINTIFF

v.

JON HAYDEN;                                                              DEFENDANTS
JESSE RIDDLE; and
MATT CARTER

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docket #33). Plaintiff filed a response (Docket #38) to which Defendants have replied (Docket #39). This matter is now ripe for adjudication. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

On May 30, 2005, an individual reported to the McCracken County Sheriff's Office that Plaintiff's son, Richard Modrell, who resided at 256 Nickell Heights, was delivering methamphetamine to local convenience stores while on duty as a Domino's Pizza delivery person. The McCracken County Sheriff's Office drug division obtained additional information pertaining to illegal drug activity at 256 Nickell Heights over the next few days.

On June 7, 2005, Defendant Hayden received a call from Bridgette Maxie with the Kentucky Department of Families and Children about another complaint of illegal drug activity at 256 Nickell Heights. The complaint reported that Michelle Lindsey and her fifteen year old daughter had been seen using marijuana together at 256 Nickell Heights. The report also indicated that the adults at

that residence used methamphetamine and crack cocaine in the home and that Lindsey's daughter had stepped on a crack pipe and cut her foot. The complaint also indicated that there were loaded guns in the house and that adults answered the door with guns in their hands. Maxie requested a sheriff's deputy to accompany her to the residence so that her office could investigate the complaint.

On June 8, 2005, Defendant Riddle accompanied Maxie to the residence at 256 Nickell Heights. Upon arrival at the residence Riddle knocked on the door and made contact with Plaintiff. Riddle and Maxie informed Plaintiff that they were looking for Lindsey and her daughter. Plaintiff advised them that they lived downstairs and that they needed to go around downstairs.

After being joined by another deputy, Riddle knocked on the downstairs door at the rear of the residence. Richard Modrell answered the door and Riddle confirmed with him that Lindsey and her daughter were in the basement. Richard Modrell gave Riddle consent to search which revealed methamphetamine foils. During this search, Richard Modrell informed officers that he had a firearm in the basement and that his father had firearms in the upstairs portion of the house.

While in the downstairs area of the house occupied by Richard Modrell, Riddle observed that the downstairs had a bathroom with bathing facilities and a kitchen. Riddle also observed a carpeted stairwell with a door at top which led to the upstairs portion of the house. Riddle did not check the door to determine if it was locked.

After finding methamphetamine, Riddle placed Richard Modrell under arrest. Riddle then proceeded around the back of the residence and up onto the back porch to inform Plaintiff that drugs had been discovered and that the entire residence would have to be secured while a search warrant was being obtained. Plaintiff objected to Riddle's entry into the upstairs area. Plaintiff stated that Riddle told him that he was coming in anyway while making a gesture to reach for his side which

Plaintiff interpreted as Riddle reaching for his gun.

Riddle requested that all occupants of the residence come outside onto the carport with him. Plaintiff indicated that his mother-in-law was not physically capable of doing so and that his grandchild was asleep upstairs. During this conversation, Riddle observed Lindsey's daughter enter the upstairs portion of the home through a carpeted stairwell that connected the two.[1] Lindsey's daughter had been in the portion of the residence that Richard Modrell occupied when Riddle had conducted his search. Riddle then entered the home where he remained until the search warrant arrived. Another officer secured the portion of the residence occupied by Richard Modrell while waiting for the search warrant.

Defendant Sergeant Jon Hayden arrived at the residence after Riddle had secured the dwelling. Hayden prepared a search warrant affidavit, left the home, and soon thereafter returned with a search warrant which was read to Plaintiff. Upon execution of the search warrant a large amount of illegal drugs, illegal drug paraphernalia, illegal drug use/sale related items, and several firearms were located in the area of the residence occupied by Richard Modrell. Plaintiff pointed Defendants to guns that he had located in the upstairs portion of the residence which were secured in a police cruiser and returned to Plaintiff following the search. As a result of the search, Richard Modrell and Lindsey were charged with possession of a controlled substance and possession of drug paraphernalia. Subsequently they pled guilty to the reduced charges of attempt to possess a controlled substance.

On December 14, 2005, Defendant Detective Matt Carter conducted a recorded interview

---

[1] Plaintiff indicates that this door was at the top of a carpeted stairwell and had locks and chains on both sides.

of an individual named John Goodnight who had been arrested, along with Lindsey, earlier that day on drug charges. Goodnight stated that Richard Modrell was trafficking in methamphetamine and that Goodnight had, for the last three months, delivered eight ounces of methamphetamine per week to Richard Modrell at his home located at 256 Nickell Heights. Goodnight further stated that Richard Modrell was currently manufacturing methamphetamine using a process which required him to mix the chemicals in four two-and-one-half gallon buckets which were buried under a semi tractor trailer in the yard of 256 Nickell Heights.

Hayden prepared a search warrant affidavit and obtained a search warrant to search 256 Nickell Heights. Later that day, Carter executed the search warrant at the residence with no evidence of illegal drug activity being found.

Plaintiff filed the instant action on May 12, 2006.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of

evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

**I.  42 U.S.C. § 1983**

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (quotations omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff alleges that Defendants violated the rights guaranteed to him by the Fourth, Fifth, and Fourteenth Amendments when they secured and then searched his home on June 8, 2005, and when his home was searched on December 14, 2005. Defendants argue that Plaintiff's claim must

fail as he has failed to allege and cannot maintain that Defendants violated his constitutional rights.

**A.      Fourth Amendment**

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

*1.  Warrantless Entry of the Upstairs Portion of 256 Nickell Heights on June 8, 2006*

**a.  Exigent Circumstances**

Defendants assert that the initial entry of the officers into the upstairs portion of the home and the officers remaining therein until a search warrant was obtained did not violate Plaintiff's Fourth Amendment Rights.  Defendants claim that the knowledge that there was a strong possibility that narcotic evidence was present in the home and that persons in the house were known to possess firearms justified their entry and securing of the premises.[2]

Warrantless searches are per se unreasonable under the Fourth Amendment, except in a few carefully delineated instances.[3]  *United States v. Radka*, 904 F.2d 357, 360 (6th Cir. 1990).  Here

---

[2] Defendants do not argue, nor does this Court find, that Richard Modrell's consent to search the area of the residence which he occupied allowed the officers to search the entire premises.  *See Shamaeizadeh v. Cunigan*, 338 F.3d 535, 547 (6th Cir. 2003) ("[E]ven when a search is authorized by consent, the scope of the search is limited by the terms of its authorization." (internal quotation omitted)).

[3] The exceptions to the warrant requirement include the following: automobile searches; searches pursuant to consent; searches incident to lawful arrest; seizures in plain view; limited searches and seizures under the stop and frisk doctrine; searches and seizures in hot pursuit of a

6

Defendants claim that their search was justified by the existence of exigent circumstances. The exigent circumstances exception relies on the premise that an emergency situation, demanding urgent police action, may excuse the failure to procure a search warrant. *Id.* at 361. The government bears the "heavy burden" of demonstrating exigency, as such warrantless entries and searches are "presumptively unreasonable." *Id.* The following situations may give rise to exigent circumstances: "(1) hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent a suspect's escape; and (4) a risk of danger to the police or others." *United States v. Williams*, 354 F.3d 497, 504 (6th Cir. 2003) (quoting *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994)). Defendants claim that the risk of danger and risk of imminent destruction of evidence exigencies applied under the situation.

A warrantless entry will be sustained when the circumstances then existing were such as to "lead a person of reasonable caution to conclude that evidence of a federal crime would probably be found on the premises and that such evidence would probably be destroyed within the time necessary to obtain a search warrant." *Radka*, 904 F.2d at 362. Affirmative proof of the likelihood of the destruction of evidence, along with the necessity for warrantless entry are required. *Id.* A warrantless entry will also be upheld where there is a "need to protect or preserve life or avoid serious injury either of police officers themselves or of others." *Williams*, 354 F.3d at 505 (quoting *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir. 1994)).

Defendants primarily rely on *United States v. Elkins*, 732 F.2d 1280 (6th Cir. 1984), to support their position. In *Elkins*, officers who set up a drug buy stopped a car as it left a house they

---

fleeing felon; and searches and seizures to prevent the loss or destruction of evidence. *United States v. Radka*, 904 F.2d 357, 360 n.3 (6th Cir. 1990).

7

were surveying. *Id.* at 1283. Upon determining that the target of the bust was not in the car, they assumed that the target was still in the house, had seen the commotion, and was now destroying evidence. *Id.* Officers approached the front door, announced their identity to the man who opened the door, and observed a person inside the house make a hasty retreat upon their announcement. *Id.* The officers were temporarily blocked from leaving this room by large dogs. *Id.* At the same time, officers located on the outside of the house observed two people, including the target, dumping drugs down the toilet. *Id.* Inside, officers met the target emerging from a bedroom, arrested him, and secured him with the other known occupants in the den while a protective sweep for other persons and weapons was made. *Id.* at 1283-84. They remained in the den for approximately an hour-and-a-half waiting for the search warrant to arrive. *Id.* at 1284.

The *Elkins* Court found that exigent circumstances clearly justified the officers initial entry, finding that, following the stop of the car which did not contain the target, a reasonably cautious person would conclude that the target, who was still in the house, had seen the commotion, realized the situation, and would prudently proceed to dispatch all possible evidence *Id.* at 1285. The Court held that once having entered the premises justifiably, the officers were required to secure all persons therein and to make a protective sweep for the weapons the target was known to favor, for the safety of all concerned. *Id.*

In the present case, the officers had arrested the target of the search and removed him from the premises prior to entering the upstairs portion of the residence. An officer had secured the lower portion of the residence occupied by Richard Modrell. This Court cannot find that the Defendants have met the heavy burden of proving exigency. *See Radka*, 904 F.2d at 361. There is no evidence in the record that any suspected illegal activity was ongoing in the upper portion of the residence

8

occupied by Plaintiff.[4] Thus, no reason existed to believe that evidence of a federal crime would be destroyed within the time necessary to obtain a search warrant. *See id.* at 362. The officers had prevented such destruction by securing the lower portion of the residence. Nor was there any evidence that the officers needed to enter the residence to prevent serious injury to themselves or others; although the officers knew that Plaintiff had firearms, there was no indication that he was attempting to utilize them. *See Williams*, 354 F.3d at 505.

### b. Qualified Immunity

Defendants claim that even if Plaintiff's constitutional rights were violated, they are entitled to the defense of qualified immunity.

"Government officials performing discretionary functions are entitled to qualified immunity from civil suits for damages arising out of the performance of their official duties 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Watkins v. City of Southfield*, 221 F.3d 883, 887 (6th Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of a constitutional right, and, if so, whether it was a clearly established right that a reasonable official under the circumstances should know. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

---

[4] Defendant Riddle testified at his deposition that he had no basis to search the upstairs prior to the issuance of the search warrant.

Here we have already determined that Defendants Riddle and Hayden violated Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment. This right was clearly established at the time of the officers warrantless entry into the residence at 256 Nickell Heights. No exigent circumstances permitting the warrantless entry existed. This Court cannot find that a reasonable officer under the circumstances would not know that he was violating Plaintiff's Fourth Amendment rights. Thus, Defendants are not entitled to the defense of qualified immunity.

Therefore, Plaintiff may proceed on his Fourth Amendment claim against Riddle and Hayden for their warrantless entry of the upstairs portion of the residence on June 8, 2006.

*2.     Search Pursuant to Warrant Issued on June 8, 2005*

**a. Characterization of the Residence**

Plaintiff claims that the search warrant authorizing the search of the upstairs portion of the residence on June 8, 2005, was obtained by misleading the Magistrate as to the status of the residence as a single residence rather than a duplex. Defendants maintain that Plaintiff's residence was not being utilized as a duplex at the time of the search at issue but was rather utilized as a single family residence.

When Riddle initially made contact with Plaintiff he was told that Richard Modrell lived in a separate downstairs unit which he was renting from Plaintiff. Riddle then got in his car and pulled it around the house to enter the separate downstairs entrance. Richard Modrell confirmed with Riddle that he was renting the downstairs unit from the Plaintiff. The downstairs unit contained a separate kitchen with a refrigerator and two bedrooms. There was also a bathroom with bathing facilities. A carpeted stairwell with a door at the top connected the lower and upper residences. After placing Richard Modrell under arrest, Riddle left the downstairs unit and proceeded through

the backyard to the back door of the upper residence.

There is a single address for the entire residence and all residents use one mailbox. Richard Modrell did not pay rent but paid the utilities and helped out on the upkeep of the house. Plaintiff and Richard Modrell never signed a lease. A separate phone line was installed in the downstairs unit but was under Plaintiff's name. All utility bills for the entire residence are under Plaintiff's name. The laundry facilities, which Richard Modrell was permitted to use, are in the upper residence.

The mere fact that Plaintiff and Richard Modrell were related does not require a finding that the residence was not a duplex. *See United States v. King*, 227 F.3d 732, 738 (6th Cir. 2000) (characterizing residence as a duplex where mother and two daughters and son lived in upper unit and two other sons resided in the lower unit). Here, the upper and lower portions of the residence were connected only by a carpeted stairwell with a door on top. The two portions of the residences had separate entrances, kitchens, and bathroom facilities. While there was not a written lease, the evidence indicates that Richard Modrell paid the utilities and did housework in order to live in the downstairs unit. While the fact that the residence is listed only under a single address points to the residence being only a single-family unit, this Court finds that the totality of the facts indicate that 256 Nickell Heights was a duplex consisting of an upper and lower unit. *See United States v. Nichols*, 344 F.3d 793, 797-98 (8th Cir. 2003) (examining factors differentiating a duplex from a single residence).

**b. Description in Warrant**

The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement of the Fourth Amendment is "whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with

11

reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Pelayo-Landero*, 285 F.3d 491, 495-96 (6th Cir. 2002) (quoting *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998)). If the warrant fails to describe the place to be searched with sufficient particularity, a supporting affidavit incorporated into the warrant can cure the insufficiency if the affidavit describes the place with sufficient particularity. *United States v. Watkins*, 179 F.3d 489, 494 (6th Cir. 1999).

The June 8, 2005, search warrant failed to distinguish 256 Nickell Heights as two separate residences. Although the affidavit for the search warrant indicated that Richard Modrell resided at the address within the basement living quarters, it also failed to identify the residence as a duplex. This resulted in the search of the upper portion of the residence, which the officers did not have probable cause to search; there being no allegations of illegal activity occurring in the upper portion of the residence at 256 Nickell Heights, and no discovery of anything on the scene linking the residents of the upper portion of the residence to illegal activity. Thus, this Court finds that the warrant did not specify the place to be searched with sufficient particularity as the warrant did not differentiate between the upstairs and downstairs portion of 256 Nickell Heights. *See Pelayo-Landero*, 285 F.3d at 495-96.

### c. Qualified Immunity

The Court finds that even if Defendants violated Plaintiff's constitutional rights when they entered his residence pursuant to the June 8, 2005, search warrant, the Defendants are entitled to qualified immunity as Plaintiff has failed to demonstrate that a reasonable official under the circumstances would have known that he was violating Plaintiff's constitutional rights.

A reasonable officer could have believed that 256 Nickell Heights was a single family

residence rather than a duplex; the residence did not have the traditional side-by-side appearance of a traditional duplex, there was a connecting door between the upper and lower portion, and the occupants of the two portions were related. If the residence was characterized as a duplex, the search warrant would meet the particularity requirement. Therefore, Plaintiff may not proceed on his Fourth Amendment claim for the search pursuant to the June 8, 2005, warrant.

### 3.    *Search Pursuant to Warrant Issued on December 14, 2005*

As discussed above, although the warrant authorized a search for the entirety of 256 Nickell Heights and probable cause existed only to search the lower portion of the residence, the Defendants are entitled to qualified immunity. A reasonable officer could have believed that 256 Nickell Heights was a single family residence rather than a duplex.

### B.    Fifth Amendment

The Fifth Amendment, in relevant part, provides "No person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "The Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Scott v. Clay County*, 205 F.3d 867, 873 (6th Cir. 2000). As the Defendants' actions as McCracken County Deputy Sheriffs cannot be attributed to the federal government, the Fifth Amendment's Due Process Clause is not applicable to this case.

Therefore, this Court finds that Plaintiff's claim under the Fifth Amendment fails as a matter of law.

### C.    Fourteenth Amendment

The Fourteenth Amendment's Due Process Clause provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, §

13

1. Plaintiff's Complaint fails to identify whether he believes his substantive or procedural due process rights guaranteed by the Fourteenth Amendment were violated.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation omitted). Plaintiff has asserted that the securing and searching of his home deprived him of his constitutional rights. Plaintiff is bound to pursue such a claim under the Fourth Amendment, prohibiting unreasonable searches and seizures, not under the Fourteenth Amendment.

To establish a procedural due process claim, a plaintiff must show he had a property interest of which he was deprived without due process of law. *Hudson v. Hudson*, 475 F.3d 741, 745 (6th Cir. 2007). Plaintiff has failed to allege a procedural due process claim pursuant to the Fourteenth Amendment as he failed to allege in his complaint that Kentucky state judicial procedures do not provide sufficient due process. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Collins v. Detroit*, 780 F.2d 583, 584-85 (6th Cir. 1986).

Therefore, this Court finds that Plaintiff's claim under the Fourteenth Amendment fails as a matter of law.

## II.   STATE LAW CLAIMS

### A.   Trespass

Trespass occurs when one enters the land of another without consent or privilege. *Smith v. Carbide & Chems. Corp.*, 298 F. Supp. 2d 561, 566 (W.D. Ky. 2004). Kentucky law allows recovery under trespass in three instances: (1) the defendant was engaged in an extra-hazardous

activity, (2) the defendant committed an intentional trespass or (3) the defendant committed a negligent trespass." *Id.* (quoting *Mercer v. Rockwell Int'l Corp.*, 24 F. Supp. 2d 735, 740 (W.D. Ky. 1998)). Liability is imposed for negligent trespass only where there has been harm to the property. *Id.*

"If a search be executed under a void or invalid warrant, it is a trespass because it is made without authority, and, if malicious, an action for damages may be maintained against the trespasser, and all who aid, abet, assist or advise him in doing so." *Ingraham v. Blevins*, 236 Ky. 505, 508 (Ky. Ct. App. 1930). However, "[i]f the search is made under a valid warrant, it is authorized by law, and is not a trespass." *Id.*

As discussed above, Riddle's and Hayden's initial warrantless entry into the upstairs portion of the residence on June 8, 2005, was not justified by exigent circumstances. Thus, Plaintiff may proceed on his claim of trespass against these Defendants. However, Plaintiff's claim of trespass against Carter fails as a matter of law as does his claim of trespass against Riddle and Hayden pursuant to the execution of the search warrant of June 8, 2005. As stated above, the Defendants were entitled to qualified immunity for their actions pursuant to the execution of the two search warrants and, therefore, it cannot be said that they acted with malice.

**B.     False Imprisonment**

"Kentucky cases define false imprisonment as being any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will, whether done by actual violence, threats or otherwise. Furthermore, false imprisonment requires that the restraint be wrongful, improper, or without a claim of reasonable justification, authority or privilege." *Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. Ct. App. 2001) (citing *Grayson*

*Variety Store, Inc. v. Shaffer*, 402 S.W.2d 424 (Ky. 1966); *Great Atl. & Pac. Tea Co. v. Billups*, 69 S.W.2d 5 (Ky. 1934); *Ford Motor Credit Co. v. Gibson*, 566 S.W.2d 154 (Ky. Ct. App. 1977); *J.J. Newberry Co. v. Judd*, 82 S.W.2d 359 (Ky. 1935); *Louisville & Nashville R.R. Co. v. Mason*, 251 S.W. 184 (Ky. 1923)).

Plaintiff claims that on June 8, 2005, Defendant Riddle intentionally and unlawfully exercised force or the express or implied threat of force to restrain, detain, or confine him. Defendants argue that Plaintiff cannot maintain a cause of action for false imprisonment because, by his own admission, he was at no time placed under arrest nor did he suffer a restraint of his freedom of movement.

At Plaintiff's deposition the following exchange occurred:

Q. Okay. You, your wife, your mother-in-law were never placed in handcuffs or told that you were under arrest during the June 8th, 2005 incident were you?

A. To my knowledge, none of us were put in handcuffs. And what was the rest of the question?

Q. Told you were under arrest.

A. I asked Riddle if I'd been under arrest. He told me no.

Q. Okay. If you had wanted to walk out the door and leave, could you have done so, or do you know? Did you ask?

A. Later on, I did go out the door.

Q. Okay.

A. But at first, he was -- to my instructions, he was wanting us to be there, then he was going to run us out in the garage. And I was really kind of in fear of my life of him doing something with me if I didn't do as he instructed.

Q. All right. But you found out later it was okay to go outside if you wanted to?

      A.      I later went outside, yes.

The transcript of the interaction also indicates that Riddle told Plaintiff while he was inside his residence that he was being detained. Although part of the exchange is inaudible, it indicates that Riddle threatened to handcuff Plaintiff if he wouldn't cooperate.

Although Plaintiff may have been able to go outside at some point after his detention, he was initially told that he was being detained and at some point was even threatened with being handcuffed if he did not cooperate. A claim for false imprisonment does not require that one be detained for any set amount of time. *Id.*

Defendants also argue that Plaintiff cannot state a claim for false imprisonment because an action for false imprisonment may not be maintained where a valid process has occurred. However, as determined above, this Court finds that Riddle did not have the authority to enter the upstairs portion of the residence to secure the area prior to obtaining a search warrant. Therefore, Riddle did not have reasonable justification to detain Plaintiff.

Therefore, this Court finds that Plaintiff may proceed on his claim of false imprisonment against Riddle.

**C.**    **Abuse of Process**

"The cause of action for abuse of process has been defined as 'the technical designation of the irregular or wrongful employment of a judicial proceeding.'" *Raine v. Drasin*, 621 S.W.2d 895, 902 (Ky. 1981) (quoting *Stoll Oil Ref. Co. v. Pierce*, 337 S.W.2d 263, 266 (Ky. Ct. App. 1970)). "[A]buse of process is the employment of legal process for some other purpose other than that which it was intended by the law to effect." *Id.* "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender

17

of property or the payment of money, by the use of the process as a threat or a club." *Flynn v. Songer*, 399 S.W.2d 491, 494 (Ky. Ct. App. 1966). Thus, in other words, there is a form of extortion and "it is what is done in the course of negotiation, rather than the issuance of any formal use of the process itself, which constitutes the tort." *Id.* (quoting Prosser on Torts (3d ed.) § 115, pp. 876-77.

Here there is no allegation or evidence that any of the Defendants attempted to coerce the Plaintiff. Therefore, this Court finds that Plaintiff has failed to maintain a claim for abuse of process as a matter of law.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

Plaintiff may proceed on his Fourth Amendment claims against Defendants Riddle and Hayden for the warrantless entry of the upstairs portion of 256 Nickell Heights on June 8, 2006. Plaintiff may also proceed against these Defendants on his claim of trespass for the same warrantless entry. Plaintiff may maintain his claim against Defendant Riddle for false arrest. All claims against Defendant Carter are dismissed.

An appropriate order shall issue.