UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06-CV-74-R

PHILLIP MURRAY MODRELL                                          PLAINTIFF

v.

JON HAYDEN;
JESSE RIDDLE;
and  MATT CARTER                                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Alter, Amend and/or Vacate

(Docket #78).  Defendants have filed a response (Docket #79), to which Plaintiff has replied

(Docket #80).  This matter is now ripe for adjudication.  For the reasons that follow, Plaintiff's

Motion is GRANTED IN PART.

## BACKGROUND

On May 30, 2005, an individual reported to the McCracken County Sheriff's Office that

Plaintiff Phillip Murray Modrell's son, Richard Modrell, was delivering methamphetamine to

local convenience stores while on duty as a Domino's Pizza delivery person.  Richard Modrell

resided at 256 Nickell Heights.  On June 7, 2005, Defendant Jon Hayden, a detective for the

McCracken County Sheriff's Office, received a call from Bridgette Maxie, an employee of the

Kentucky Department of Families and Children, concerning another complaint of illegal drug

activity at 256 Nickell Heights.  Maxie stated that a caller reported that adults at the residence

used methamphetamine and crack cocaine, and that Michelle Lindsey and her fifteen year old

daughter used marijuana together in the home.  The caller also indicated that there were loaded

guns in the house and that adults answered the door with guns in their hands.  Pursuant to

Maxie's request, Defendant Jesse Riddle, a deputy for the McCracken County Sheriff's Office, accompanied Maxie to the residence on June 8, 2005, so that her office could investigate the complaint.

Upon arrival at 256 Nickell Heights, Riddle knocked on the door and made contact with Plaintiff.  Riddle and Maxie informed Plaintiff that they were looking for Lindsey and her daughter.  Plaintiff advised them that Lindsey and her daughter lived downstairs and that Riddle and Maxie would need to go around downstairs.

After being joined by another deputy, Riddle knocked on the downstairs door at the rear of the residence.  Richard Modrell answered the door and Riddle confirmed with him that Lindsey and her daughter were in the basement.  Richard Modrell gave Riddle consent to search the basement residence.  The search revealed methamphetamine foils.  During the search, Richard Modrell informed officers that he had a firearm in the basement and that his father had firearms in the upstairs portion of the residence.

While in the basement residence Riddle observed that it had a bathroom with bathing facilities and a kitchen.  Riddle also observed a carpeted stairwell with a door leading to the upstairs portion of the house.  The door had locks on both sides.  Riddle did not check the door to determine if it was locked.

After finding the methamphetamine foils, Riddle placed Richard Modrell under arrest. Richard Modrell and Lindsey were both detained by a deputy.  Riddle then proceeded around the back of the residence and onto the back porch.  Riddle informed Plaintiff that drugs had been discovered in the basement and that everyone was being detained while the police secured the entire residence for a search warrant.  Plaintiff objected to Riddle's entry into his upstairs

2

residence without a search warrant.  Plaintiff states that Riddle told him that he was coming in

anyway while simultaneously making a gesture to reach for his side.  Plaintiff interpreted this

gesture as Riddle reaching for his gun.  Defendants state that Riddle requested that all occupants

of the residence come outside onto the carport with him, and that Plaintiff indicated that his

mother-in-law was not physically capable of doing so and that Plaintiff's grandchild was asleep

upstairs.

Defendants state that during this conversation, Riddle observed Lindsey's daughter enter

the upstairs portion of the home through the door at the top of the carpeted stairwell that

connected the two residences.  Defendants state that Riddle then entered the home and remained

there until the search warrant arrived.  Sometime after Riddle had entered and secured the

upstairs area, Hayden arrived and also entered the upstairs residence.

## PROCEDURAL HISTORY

On August 3, 2007, this Court issued a Memorandum Opinion and Order granting in part

and denying in part Defendants' Motion for Summary Judgment.  The Court concluded that

Plaintiff could proceed on his Fourth Amendment claims against Riddle and Hayden for the

warrantless entry of the upstairs portion of 256 Nickell Heights on June 8, 2006, because the

officers did not have probable cause to believe that the upstairs residence contained evidence of

a crime or contraband, and that there was no good reason to believe that contraband would be

destroyed before they could return with a warrant.  The Court also held that Plaintiff could

proceed against Riddle and Hayden on his claim of trespass for the same warrantless entry, and

maintain a claim against Riddle for false imprisonment.[1]

On August 16, 2007, Defendants filed a motion to alter, amend, and/or vacate the judgment under Federal Rule of Civil Procedure 59(e), arguing that the Court made inconsistent findings which conflicted with the clearly established law on the issues.  Based on the Court's understanding that Riddle entered the upstairs residence after he observed Lindsey's daughter come through the door at the top of the connecting stairwell, the Court found that Riddle could have reasonably believed that an exigent circumstance required him to enter and detain the adults located in the upstairs residence.  Therefore, the Court found that Riddle was entitled to qualified immunity on Plaintiff's Fourth Amendment, trespass and false arrest claims.  Defendants also argued that Hayden was entitled to judgment and qualified immunity because he merely followed Riddle into the residence, citing *Sargent v. City of Toledo Police Dep't*, 150 Fed. Appx. 470 (6th Cir. 2005).  In light of *Sargent*, the Court found that Hayden's entry into the residence was reasonable and that he committed no Fourth Amendment violation.

On April 28, 2008, Plaintiff filed the current Motion to Alter, Amend and/or Vacate, primarily arguing that exigent circumstances never existed for Riddle to enter the upstairs residence without a warrant and detain the adults therein because Lindsey's daughter was never observed entering the upstairs portion of the home through the carpeted stairwell that connected

---

[1] Additionally, the Court found that: (1) Plaintiff's claims under the Fifth and Fourteenth Amendments failed as a matter of law; (2) Plaintiff failed to maintain a claim for abuse of process as a matter of law; and (3) Defendants were entitled to qualified immunity with respect to the searches conducted pursuant to warrants issued on June 8, 2005, and December 14, 2005. Plaintiff did not raise these issues in his current Motion, and so these findings will not be reconsidered in this opinion.

the two residences.[2]

## STANDARDS

The motion presently before the Court is Plaintiff's Motion to Alter, Amend and/or Vacate.  A court may grant a motion to alter or amend pursuant to Federal Rule of Civil Procedure 59(e) "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law or to prevent manifest injustice."  *GenCorp v. Am. Int'l*, 178 F.3d 804, 834 (6th Cir.1999) (internal citations omitted).  "[C]ourts typically will consider additional evidence accompanying a Rule 59(e) motion only when it has been newly discovered, and that to [c]onstitute 'newly discovered evidence,' the evidence must have been previously unavailable." *Id.*  A Rule 59(e) motion to alter does not provide parties with another opportunity to argue the merits of their case.  *Id.*

Originally, Defendants filed a motion for summary judgment.  Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] Defendants argue that Plaintiff's Motion should be denied because it is late.  On July 29, 2008, the Court granted Plaintiff's motion for extension of time to file the Motion.  Even though the Court's order only granted an extension until April 22, 2008, and Plaintiff did not file the current Motion until April 28, 2008, the Court will not deny Plaintiff's Motion because it is late.  Defendants have responded to the merits of Plaintiff's Motion.  Also, Defendants never filed a response to Plaintiff's motion for extension.

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### A.   Exigent Circumstances

Plaintiff alleges that Defendants violated the rights guaranteed to him by the Fourth Amendment when they secured and then searched his home without a warrant on June 8, 2005. The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Plaintiff's claim is brought pursuant to 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (quotations omitted). To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the

United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants assert that the initial entry of the officers into the upstairs portion of the home and the officers remaining therein until a search warrant was obtained did not violate Plaintiff's Fourth Amendment rights. Defendants argue that Riddle was justified in securing the upstairs to ensure that no one could obtain a weapon or dispose of further evidence of illegal drug activity.[3]

As a general rule, warrantless searches and seizures inside a home are "presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (citations omitted). However, in an emergency situation demanding urgent police action, the failure to procure a search warrant may be excused. *United States v. Radka*, 904 F.2d 357, 361 (6th Cir. 1990). If "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment," then the warrant requirement may be excused. *Brigham City*, 547 U.S. at 403 (quotations and citations omitted). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify the action." *Id.* at 404 (citation omitted). Defendants argue that two exigencies apply in this case, risk of danger and risk of imminent destruction of evidence.

### 1. Risk of Danger

A warrantless entry may be upheld if there is a "need to protect or preserve life or avoid

---

[3] Defendants do not argue, nor does this Court find, that Richard Modrell's consent to search the area of the residence which he occupied in the basement allowed the officers to search the entire premises. *See Shamaeizadeh v. Cunigan*, 338 F.3d 535, 547 (6th Cir. 2003) ("[E]ven when a search is authorized by consent, the scope of the search is limited by the terms of its authorization." (internal quotation omitted)).

serious injury either of police officers themselves or of others." *United States v. Williams*, 354 F.3d 497, 505 (quoting *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir. 1994)).  The government bears the burden of proving that such a risk of danger existed to justify a warrantless entry into an individual's home.  *Id.* at 503.

"The risk of danger exigency most frequently justifies warrantless entries in cases where the Government is acting in something other than a traditional law enforcement capacity."  *Id.* (citation and internal quotations omitted).  For example, in *Michigan v. Tyler*, the Supreme Court held that a warrantless entry into a burning building did not violate the Fourth Amendment.  436 U.S. 499, 509 (1978).  The Supreme Court also found that exigent circumstances existed in *Brigham City v. Stuart*, where police officers observed an escalating altercation through a screen door and had an objectively reasonable basis for believing that injured persons might need help. 547 U.S. at 406.  The Sixth Circuit has held that a "warrantless entry was justified by the need to free a victim who had been held against her will and sexually assaulted."  *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994).  The Sixth Circuit has also found that officers had "ample justification for fearing for their own safety and especially the safety of others" in entering a home without a warrant, where the officers observed a man discharge a firearm on his porch and then run into the house with the gun when he became aware of the officers' presence. *United States v. Johnson*, 106 Fed. Appx. 363, 368 (6th Cir. 2004).

Here, according to Riddle's deposition testimony, his "main focus" at the time he returned upstairs to speak with Plaintiff was "securing the people that were at the residence" because "the most dangerous part are the people at the residence" since they "have a potential to harm" the officers.  (Riddle Dep. 18:22-19:20, Mar. 16, 2007.)  At the time Riddle went upstairs

to speak with Plaintiff, Richard Modrell and Lindsey were both detained, and a deputy remained downstairs.  (*Id.* at 19-20, 31.)  Riddle does not recall checking to see if the door at the top of the carpeted stairwell was locked prior to entering the upstairs through Plaintiff's door.  (*Id.* at 17-18.)  During the course of the investigation downstairs, Riddle had been told that Plaintiff had "some firearms."  (Trans. of Knock & Talk Investigation Conducted at 256 Nickell Heights at 12, June 8, 2005) [hereinafter "Investigation Trans."].  He had also been told several times that Plaintiff's upstairs residence was separate from Richard Modrell's basement apartment, and it appears from the transcript of the investigation that he understood as much at the time.  (*Id.* at 4, 5, 9, 11, 14.)

The Court finds that Riddle did not have an objectively reasonable basis for believing that entering Plaintiff's resident without a warrant was necessary to "protect or preserve life or avoid serious injury either of police officers themselves or of others."  *Willaims*, 354 at 505. There is no evidence that indicates that there would have been "real immediate and serious consequences" if Riddle had postponed entering Plaintiff's residence and waited outside for the warrant.  *See id.* at 503.  Riddle had no reason to believe that anyone in Plaintiff's residence was in danger.  And although Riddle had been informed by Richard Modrell that his father had some firearms, there was no indication that Plaintiff would utilize them to harm the officers or others. While Riddle may not have perceived Plaintiff as friendly, Plaintiff had already spoken to Riddle in a reasonable manner and had been helpful in directing him to his son's residence.  In light of the evidence presented, the Court cannot find that Defendants have shown that the warrantless entry of Plaintiff's residence was justified by the risk of danger exigent circumstance exception to the Fourth Amendment's warrant requirement.

The Court is sympathetic to Riddle's concern for his safety and the safety of his fellow officers, but cannot find that this concern justified his entry into Plaintiff's residence without a warrant.  The Supreme Court has recognized the interest officers have "in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack."  *Maryland v. Buie*, 494 U.S. 325, 333 (1990).  Officers making arrests in a home may conduct a "protective sweep," or "a quick and limited search of premises."  *Id.* at 327.  Incident to an arrest, "as a precautionary matter and without probable cause or reasonable suspicion," officers may "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."  *Id.* at 334.  Officers may also conduct a broader sweep when they have "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."  *Id.*; *see also United States v. Stover*, 474 F.3d 904, 911-12 (6th Cir. 2007).

Defendants only make a cursory argument that Riddle's entry was a "protective sweep." The Court finds that entering Plaintiff's home without a warrant and remaining inside for two or three hours until the search warrant arrived does not constitute a "quick and limited search of premises."  Moreover, Defendants have not proven that Riddle reasonably believed that Plaintiff's residence harbored an individual posing a danger to those on the arrest scene.  An officer that was concerned about the safety of those in the basement would presumably check to see if the stairwell door connecting the two residences was locked.  Riddle's knowledge that Plaintiff owned firearms, in and of itself, does not lead to the conclusion that his residence

10

harbored an individual posing a danger to those on the arrest scene.  While Riddle may have been affected by the recent shooting of a fellow deputy, that also does not justify the warrantless entry of Plaintiff's residence.

In sum, the risk of danger exigency cannot excuse Defendants' entry into Plaintiff's residence without a warrant and their remaining inside for two or three hours until the search warrant arrived because Defendants have not shown it was reasonably necessary to avoid serious injury to police officers or others.

### 2.   Imminent Destruction of Evidence

Another situation that may give rise to an exigent circumstance and excuse the warrant requirement is when "a person of reasonable caution" would "conclude that evidence of a federal crime would probably be found on the premises and that such evidence would probably be destroyed within the time necessary to obtain a search warrant."  *Radka*, 904 F.2d at 362.  Here, Defendants argue that Riddle was justified in entering Plaintiff's residence without a warrant because he observed Lindsey's daughter enter the upstairs residence through the door connected to the downstairs residence.  Consequently, several opinions that analyze the imminent destruction of evidence exigency are instructive in this matter.

In *United States v. Radka*, the Sixth Circuit held that a warrantless entry was not justified by the exigent circumstances exception to the Fourth Amendment.  904 F.2d at 363.  During an investigation of a residence suspected to contain marijuana, Drug Enforcement Administration ("DEA") agents stopped a van exiting the residence.  *Id.* at 359.  A search of the van revealed four boxes of drugs.  *Id.*  Another car was stopped exiting the property, which was searched and did not reveal any drugs.  *Id.*  Concerned that the surveillance would make the people inside the

11

property flee and destroy evidence, the DEA agents decided to enter and secure the property. *Id.* They knocked on the door, and receiving no response, they forced entry. *Id.*

The Sixth Circuit stated that the "government bears the heavy burden of demonstrating exigency," as "[s]uch warrantless entries and searches are presumptively unreasonable." *Id.* at 361 (quotations omitted). The court further stated the "mere possibility of loss or destruction of evidence is insufficient justification" for a warrantless entry, instead "[a]ffirmative proof of the likelihood of the destruction of evidence, along with the necessity for warrantless entry are required." *Id.* at 362 (citations omitted). The Sixth Circuit found that there were not facts to support the district court's finding that the agents "had an objectively reasonable belief that the destruction of narcotics was imminent." *Id.* at 363.

In their initial motion for summary judgment, Defendants relied primarily on *United States v. Elkins*, 732 F.2d 1280 (6th Cir. 1984), to support their position that Riddle's entry into Plaintiff's home was justified by the risk that evidence of a crime would have been destroyed within the time necessary to obtain a warrant. In *Elkins*, officers who set up a drug buy stopped a car as it left a house they were surveying. *Id.* at 1283. Upon determining that the target of the bust was not in the car, the officers concluded that the target was still in the house, saw the commotion, and was now destroying evidence. *Id.* Officers approached the front door, announced their identity to the man who opened the door, and observed a person inside the house make a hasty retreat upon their announcement. *Id.* The officers were temporarily blocked from leaving this room by large dogs. *Id.* At the same time, an officer located on the outside of the house observed two people through a window, including the target, dumping drugs down the toilet. *Id.* Inside, officers met the target emerging from a bedroom, arrested him, and secured

him with the other known occupants in the den while a protective sweep for other persons and weapons was made. *Id.* at 1283-84. They remained in the den for approximately an hour and a half waiting for the search warrant to arrive. *Id.* at 1284. The *Elkins* Court found that exigent circumstances justified the officers initial entry because following the stop of the car which did not contain the target, a reasonably cautious person would conclude that the target, who was still in the house, had seen the commotion, realized the situation, and would prudently proceed to dispatch all possible evidence *Id.* at 1285.

In *Illinois v. McArthur,* the Supreme Court held that a warrantless seizure did not violate the Fourth Amendment. 531 U.S. 326, 331 (2001). Police officers had accompanied the defendant's wife to keep the peace while she removed her belongings from the trailer where she lived with her husband. *Id.* at 328. She advised the police officers that her husband had marijuana inside, hidden underneath the couch. *Id.* at 329. An officer asked defendant's permission to search the trailer, which he refused. *Id.* The other officer then went with defendant's wife to obtain a search warrant. *Id.* The defendant at this point was on his porch. *Id.* The first officer informed him that he could not reenter the trailer unless a police officer accompanied him. *Id.* The defendant reentered the trailer a few times, and each time the officer stood just inside the door to observe what the defendant did. *Id.*

The Supreme Court stated that in those circumstances, where "the restraint at issue was tailored to that need, being limited in time and scope," "and avoiding significant intrusion into the home itself," it could not "say that the warrantless seizure was *per se* unreasonable." *Id.* at 331. "[R]ather than employing a *per se* rule of unreasonableness," the Court balanced "the privacy-related and law enforcement-related concerns to determine if the intrusion was

13

reasonable." *Id.* The Court concluded that the seizure did not violate the Fourth Amendment because it was reasonable in light of the following circumstances: (1) the police had probable cause to believe the residence contained evidence of a crime and contraband; (2) the police had good reason to fear that, unless restrained, the suspect would destroy the contraband before they could return with a warrant; (3) the police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy; and (4) the police imposed the restraint for a limited period of time. *Id* at 331-32. The Court also noted that a seizure of a person in the doorway of a house is "less serious" than entering a house, stating that "[t]emporarily keeping a person from entering his home, a consequence whenever police stop a person on the street, is considerably less intrusive than police entry into the home itself in order to make a warrantless arrest or conduct a search." *Id.* at 336 (citing *Payton v. New York*, 445 U.S. 573, 585 (1980) (stating that the Fourth Amendment's central concern is the warrantless entry and search of the home)).

In *United States v. Carter*, a divided Sixth Circuit panel held that the warrantless entry of defendant's hotel room was justified by the exigent circumstances exception to the Fourth Amendment. No. 01-5338, 2003 WL 118265 at *3 (6th Cir. Jan. 15, 2003).[4] After monitoring defendant's hotel room and conducting a related search of a vehicle, officers approached defendant's room. *Id.* at *1. They knocked, indicating they were housekeeping personnel. *Id.* The defendant opened the door, and the officers detected the odor of marijuana, observed and

---

[4] The Sixth Circuit granted rehearing *en banc* to consider whether the warrantless entry of defendant's hotel room was justified by the exigent circumstances. *United States v. Carter*, 378 F.3d 584, 586 (6th Cir. 2004). The court did not reach that issue because it concluded that the defendant consented to the entry. *Id.*

14

instantly identified a marijuana "blunt" in an ashtray on a table adjacent to the door. *Id.* When the officers asked permission to enter the room, the defendant did not respond, but he did step back. *Id.* An officer then proceeded to the table, confirmed his belief that the "blunt" contained marijuana residue, and placed the defendant under arrest. *Id.* at *2.

The court reasoned that the officer's seizure of the "blunt," validated by the plain view doctrine, furnished exigent circumstances that justified the warrantless entry into the hotel room because defendant would have disposed of the "blunt" had the officers withdrawn to seek a search warrant. Discussing the dissent's assertion that the officers could have impounded the premises and ordered the defendant to remain in view while the search warrant was obtained, the majority distinguished the case from *Illinois v. McArthur.* *Id.* at *3 n.4. The majority explained that a "central distinction" existed between the two cases: "in *McArthur*, police restrained the defendant *outside* his home, preventing re-entry, while the search warrant arrived." *Id.* "This 'considerably less intrusive' measure simply did not apply" in *Carter* because the defendant "remained *inside* the hotel room." *Id.* (quoting *McArthur*, 531 U.S. at 336).

While instructive, neither *Radka*, *Elkins*, *McArthur*, nor *Carter* perfectly resemble the facts here. In this case, Defendants argue that Riddle was justified in entering Plaintiff's residence without a warrant to ensure no one would dispose of further evidence of illegal activity. Specifically, Defendants state that Riddle entered Plaintiff's home *after* he observed Lindsey's daughter enter the upstairs residence through the carpeted stairwell, from the basement, while Riddle was speaking to Plaintiff at his door. Unlike *Radka* or *Elkins*, the officers had no reason to believe Plaintiff, his wife, his mother, or his grandchild were engaging in any illegal activity. These individuals were not suspects or targets. Riddle did not observe

anyone in the process of attempting to destroy evidence of a crime.  Unlike *McArthur*, Plaintiff was detained inside his home, not on his porch.  Also unlike *McArthur*, Riddle had no specific evidence that there were illegal drugs in Plaintiff's residence.  And unlike *Carter*, Riddle did not observe any illegal activity or substances from Plaintiff's doorway, nor was Plaintiff suspected of any illegal activity.

In their motion for reconsideration, Defendants argued that the burden articulated in *McArthur* applies here.  They argued that "rather than employing a *per se* rule of unreasonableness" the Court should balance "the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable" because detaining the individuals in Plaintiff's residence and securing it until a warrant arrived was "tailored to that need" and "limited in time and scope."  *See McArthur*, 531 U.S. at 331.  The Court disagrees.  *McArthur* did not invalidate the "presumptively unreasonable" standard normally applied when determining whether exigent circumstances justified a warrantless entry.  Riddle's warrantless entry into Plaintiff's residence is "presumptively unreasonable," and Defendants bear the burden of showing that there was a risk of imminent destruction of evidence in order to justify it.  *See Radka*, 904 F.2d at 361; *Carter*, 2003 WL 118265 at *3.  The Supreme Court's decision not to apply a *per se* rule of unreasonableness in *McArthur* relied on the critical fact that the defendant was restrained outside of his home.  531 U.S. at 331, 336; *see also Carter*, 2003 WL 118265 at *3 n.4.  In *McArthur*, when the defendant went into the home, the officer observed him just inside the door.  531 U.S. at 329.  Here, Riddle entered Plaintiff's residence and remained inside for several hours while waiting for a warrant.  Therefore, the appropriate analysis here is whether Defendants have demonstrated that the risk of imminent destruction of evidence justified

Riddle's otherwise unreasonable warrantless entry into Plaintiff's residence, resolving all ambiguities and drawing all reasonable inferences against Defendants.

In Plaintiff's current motion for reconsideration, he argues that there was no imminent risk evidence would be destroyed, and so there was no justification for Riddle to enter the upstairs residence without a warrant and detain the adults there.  Specifically, Plaintiff argues that Lindsey's daughter was never observed going upstairs because the door was locked and because she was in the custody of Maxie.  The Court previously found that Riddle could have reasonably believed an exigent circumstance existed based on the Court's understanding that Riddle observed Lindey's daughter enter the upstairs residence through the stairwell.  Upon a closer review of the evidence presented, however, the Court finds that there is a genuine dispute as to whether, or when, Lindsey's daughter entered the upstairs residence.

In their motion for summary judgment filed on April 11, 2007, Defendants outlined the events leading up to Riddle's entry of the home as follows: (1) "Riddle requested that all occupants of the residence come outside onto the carport with him, where he intended to remain until a search warrant could be secured;" (2) Plaintiff refused "because his mother-in-law was not physically capable of doing so and because Plaintiff's grandchild (Richard Modrell's daughter) was asleep;" (3) "During this conversation, Riddle observed [Lindsey's daughter] enter the upstairs portion of the home through the carpeted stairwell that connected the two. She had been in the basement when he was searching the basement just a few minutes before that;" (4) "Riddle entered the home, where he remained until the search warrant arrived."

Defendants cite Plaintiff's deposition testimony as the authority for this outline of events. However, Plaintiff's testimony does not support Defendants' characterization of how Riddle

17

entered Plaintiff's home.  The relevant portion of Plaintiff's testimony states as follows:

> A: When he came in, I asked him if we was under arrest, and he said no, and I told him that I was going to call my counsel.
>
> Q: Okay.
>
> A: He was instructive as to he was wanting to round up all the people in the house and go to the carport.  And then I think when he found that there was one that wouldn't be able to move around and the grandchild was asleep upstairs with us, that he might have changed his theory or plan. I don't know what he was thinking.
>
> ...
>
> Q: Okay. At some point, [Lindsey's daughter] came upstairs?
>
> A: Yes.
>
> Q: When did she do that?
>
> A: I believe it was before or right around the time– it was in a short period of time after they had arrived and been down there, she came up and– to inquire about me coming down, and I was contained upstairs, that Richard was asking for me.
>
> Q: Okay. You were– where were you? You were already talking to Deputy Riddle at that time upstairs?
>
> A: We was in the house, and there was– it was shortly around that time that she came up and knocked on the door.  I think my wife– I didn't let her in.  My wife went to the door to see what she wanted when she knocked on the door.
>
> Q: Do you know for a fact that she knocked on the door?  Is it possible that she just walked through the door?
>
> A: I don't think she walked through the door because I think my wife unlocked the door to let her in at that time.
>
> Q: You don't know this for sure? Did you see this?
>
> A: No, I didn't see her come up through the door.
>
> Q: Okay.
>
> A: From my recollection, discussion with my wife, she said that she– she let her in the upstairs door.
>
> Q: Okay. And you believe this was when you were upstairs with Deputy Riddle?
>
> A: I don't know who was up there, but there was police in the house, yes.

(P. Modrell Dep. 70:1-12, 82:11-83:22, Jan. 18, 2007.)  This testimony supports the fact that

Lindsey's daughter came upstairs at some point, but does not support Defendants' outline of

events.  Instead, it seems that Riddle entered Plaintiff's house before requesting Plaintiff and the

18

other residents to go out to the carport, and before observing Lindsey's daughter in the upstairs

portion of the home.

The transcript from the recording of the investigation also indicates that Riddle entered

Plaintiff's residence before observing Lindsey's daughter.  According to the transcript, it seems

that Riddle explained to Plaintiff, while standing outside the door, that drugs were found in the

downstairs apartment and that everybody in the house was being detained while it was secured

for a search warrant.  Plaintiff objected to any entry of the upstairs without a warrant.  The

portion of the transcript indicating that Riddle was entering the upstairs reads as follows:

> PHILLIP MODRELL: I'm not agreeing to it.
> DET. RIDDLE: That's fine.
> PHILLIP MODRELL: You're forcing your way in.
> DET. RIDDLE: That's correct. Yeah.

(Investigation Trans. at 38.)  Subsequently, Plaintiff continued to object.  Riddle explained that

they had to secure the upstairs for the officer's safety and to make sure no one disposed any

drugs while the warrant was being obtained.  The portion of the transcript that references

Lindsey's daughter being upstairs reads as follows:

> PHILLIP MODRELL: This is not part of the house.  That's separate
>      quarters down there.
> DET. RIDDLE: Well, it's part of the house because they've got a
>      stairwell.  How did your– how did this other daughter get
>      upstairs with this female if it ain't part of the house?
> PHILLIP MODRELL: She's been up here since yesterday.
> DET. RIDDLE: Well, she was just downstairs where I was.
> PHILLIP MODRELL: She just came up the steps.
> DET. RIDDLE: That's right.  And it's part of the house.
> PHILLIP MODRELL: You mind waiting outside?
> DET. RIDDLE: No, sir.  I'm not going to wait outside.
> MS. MAXIE: (Inaudible) So I can figure out what to do with her.

(*Id.* at 40-41).  It is not clear from this portion of the transcript what was transpiring; it is not

even entirely clear whether they were referring to Lindsey's daughter or Plaintiff's grandchild. It also appears that Maxie was in the room, which would support Plaintiff's assertion that Lindsey's daughter was in her control, so that she would not have been able to destroy evidence.

Finally, the deposition transcript of Brenda Modrell, Plaintiff's wife, does not provide any clarification of the events.  Brenda Modrell testified that she did not recall Lindsey's daughter coming upstairs until later in the day.  (B. Modrell Dep. 47:23-48:23, Mar. 16, 2007.) She admitted that it would have been possible for Lindsey's daughter to have come upstairs before the search warrant was obtained, but did not recall anything besides sitting with her elderly mother, who was upset and experiencing chest pains at the time.  (*Id.* at 49:6-12.)  She stated that she believed the connecting door was locked, but there was a possibility that the door was unlocked.  (*Id.* at 50:1-51:16.)

When closely examined, the evidence does not show that Riddle observed Lindsey's daughter enter the upstairs portion of the home through the carpeted stairwell that connected the upstairs and downstairs residences *prior* to entering Plaintiff's residence.  For exigent circumstances to justify Riddle's warrantless entry into Plaintiff's residence, he would have needed "an objectively reasonable basis for concluding that the loss or destruction of evidence [was] imminent."  *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir. 1988); *see also United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001).  The general test for determining when the possibility of destruction of evidence might constitute exigent circumstances sufficient to justify a warrantless entry into a home is whether the police have "a reasonable basis for believing there is someone in the house who would likely destroy evidence." *Campbell*, 261 F.3d at 631-32.

20

The individuals who appear to have been in the house after Richard Modrell and Lindsey were detained, besides the officers and Maxie, were the Plaintiff, his wife Brenda, his young grandchild, his elderly mother, and Lindsey's daughter.  Defendants state that Riddle entered Plaintiff's residence after he saw Lindsey's daughter enter the upstairs through the stairwell, fearing that she would destroy evidence.  However, the evidence does not clearly support that contention.  Defendants also state that "it is entirely reasonable for officers to expect parents to destroy evidence that will be used to criminally prosecute their child."  The Court disagrees. There was an deputy stationed downstairs where the drugs were found.  The officers had no knowledge of any evidence in Plaintiff's residence.  Plaintiff, his wife Brenda, his young grandchild, and his elderly mother were not targets or suspects.  Plaintiff cooperatively told Riddle where his son lived.  It is not reasonable to assume that just because Plaintiff and his wife were likely concerned about their son, that they would rush to destroy evidence of a crime. Riddle did not have a reasonable basis for believing that Plaintiff, his wife, his young grandchild, or his elderly mother would likely and imminently destroy evidence.

Therefore, because there is a genuine dispute in the evidence as to whether Riddle saw Lindsey's daughter in the upstairs portion of the home before he entered, the Court's prior finding of summary judgment in favor of Defendants on this issue was inappropriate.  The Court now finds that there is a genuine issue of material fact regarding the whereabouts of Lindsey's daughter, whether she was in the control of Maxie, and what Riddle observed prior to entering Plaintiff's residence without a warrant.

**B.      Qualified Immunity**

Defendants claim that even if Plaintiff's constitutional rights were violated by

Defendants Riddle and Hayden's warrantless entry on June 8, 2006, they are entitled to the defense of qualified immunity.  "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007).  In other words, "law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." *Id.* at 229 (quoting *Davis v. Scherer*, 468 U.S. 183, 196 (1984)).  "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

A court evaluating a claim of qualified immunity must first consider whether, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the facts alleged show that the officer's conduct violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Id.*  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*  A constitutional right is "clearly established" if "the defendants had 'fair warning' that their actions were unconstitutional." *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005).  There are two paths available to a plaintiff to show "that officers were on notice that they were violating a 'clearly established' constitutional right– where the violation was sufficiently 'obvious' under

the general standards of constitutional care that the plaintiff need not show 'a body' of 'materially similar' case law, and where the violation is shown by the failure to adhere to a 'particularized' body of precedent that 'squarely govern[s] the case here.'" *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199-200).

### 1.   Jesse Riddle

First, taken in the light most favorable to the Plaintiff– that no exigent circumstances existed to justify the warrantless entry into his home– the facts alleged show that Riddle violated Plaintiff's Fourth Amendment right.  Second, the Court finds that this right was clearly established.  The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."  *United States v. U.S. Dist. Court for the E. Dist. of Mich.*, 407 U.S. 297, 313 (1972); *see also Payton v. New York*, 445 U.S. 573, 585 (1980).  Therefore, in order to prevent manifest injustice, Plaintiff may proceed on his Fourth Amendment claim against Riddle for his warrantless entry of Plaintiff's residence on June 8, 2006.  (*See also* Mem. Op. 9-10, Aug. 3, 2007.)

### 2.   Jon Hayden

The Court maintains, as explained in its March 28, 2008, memorandum opinion, that in light of *Sargent v. City of Toledo Police Dep't*, 150 Fed. Appx. 470 (6th Cir. 2005), Hayden's entry into Plaintiff's residence was reasonable and he committed no Fourth Amendment violation.  (Mem. Op. 6, Mar. 28, 2008.)

### C.   State Law Claims

Because the Court finds that Defendants have not demonstrated that exigent circumstances existed for Riddle's entry into Plaintiff's residence, it shall return to its prior

August 3, 2007, determination that Plaintiff may proceed against Riddle for trespass and false imprisonment.  (Mem. Op. 14-17, Aug. 3, 2007.)

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion to Alter, Amend and/or Vacate is GRANTED IN PART.  In order to prevent manifest injustice, Plaintiff may proceed against Defendant Jesse Riddle for the warrantless entry of his upstairs residence on June 8, 2006.  Also to prevent manifest injustice, Plaintiff may proceed against Riddle on his claims of trespass and false arrest.

24